UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WINSTON CLAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13CV1471 CEJ |
| | ) | |
| STATE OF MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court upon the motion of plaintiff for leave to commence this action without prepayment of the filing fee pursuant to 28 U.S.C. § 1915. Upon consideration of the financial information provided with the motion, the Court finds that plaintiff is financially unable to pay any portion of the filing fee. Therefore, plaintiff will be granted leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. Additionally, the Court has reviewed the complaint and will dismiss it pursuant to 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(e)**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact."

Neitzke v. Williams, 490 U.S. 319, 328 (1989). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. Spencer v. Rhodes, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), aff'd 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Id. at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. Id. at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." Id. The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred. Id. at 1950, 51-52.

## The Complaint

Plaintiff, a resident of the City of St. Louis, brings this action for violations of his civil and "indigenous" rights. His complaint is more than 40 pages long and he submits an additional 40 pages of exhibits. Named as defendants are: the State of Missouri; St Louis County; Unknown Pnicks (St. Louis County Police Officer); John Does 1-2 (St. Louis County Detectives); Unknown Wells (St. Louis County Police Officer); the St. Louis County Police Department); Bank of America Corporation, NA; CitiBank Mortgage, NA; KMOV Channel 4; and Mortgage Electronic Registration Service ("MERS").

Plaintiff asserts that jurisdiction is premised on 42 U.S.C. § 1983 to "redress the deprivation by the defendants of rights secured to the plaintiff" under various amendments to the Constitution. Plaintiff also asserts that defendants have conspired to interfere with his civil rights in violation of 42 U.S.C. § 1985.

Plaintiff claims that on July 1, 2013, he was called to a home in Florissant he "acquired" in 2012, under the auspices of his business, Khan El Land Acquisition Company. Plaintiff states he acquired the home by "adverse possession" when the actual registered owner of the property, Tracey Franklin, divorced her husband and left the home abandoned. He alleges:

> After finding it abandoned and neglected window broken grass high. Changed locks, fixed back door, and fixed plumbing cleaned out home of

> trash and dumpsters. Landscaping, cleaned carpets and sent notice and liened property when it was brought up to code. Knowing eventually the taxes had to be paid we continued to get the property up to code and rented it out to eventually try to get property free and clear of expenses.

Plaintiff states that Ms. Franklin called the police when she came back to the home and found someone else living there. He alleges that he was arrested when he came to the property and attempted to explain that he had acquired ownership by way of adverse possession. Plaintiff states that he showed the police his "corporate documents;" however, he was charged with theft, forgery, burglary and for filing a non-consensual common law lien. See State v. Clay, No. 13SL-CR06312-01. Plaintiff states that he posted bond and was released the next day.

Plaintiff claims that his property manager, Todd Edwards was arrested on July 9, 2013 under similar circumstances at "another home that was "adverse possessed by Khan El Land Acquisition Company, 11503 Rosary Lane, St. Louis, Mo., 63138. This home was a by product of fraud in the Taylor, Bean Whitaker Mortgage Company fraud against the United States. Khan El took this property under investigation of fraud and was preparing a qui tam for the USDOJ." Plaintiff states that Mr. Edwards is still being held in jail.

Plaintiff asserts that on July 10, 2013, his and Edwards' photographs were shown on KMOV- Channel 4 as "breaking news." According to plaintiff, it was reported that he and Edwards were "forging documents and deeds and finding

abandoned homes and putting people in them." Plaintiff claims that KMOV slandered his and Edwards' names and reputations during the newscast.

Plaintiff claims that his home, which was also "adverse possessed" by Khan El Land Acquisition Company, at 1230 Hermans Lake Drive, St. Louis, Missouri, 63034, was searched by the St. Louis County Police Department and "ransacked" pursuant to "some unclear warrant" on July 12, 2013. Plaintiff states that this was the same day he went to file a civil action at the St. Louis County Court and was told that he couldn't get a copy of a police report until the case went to court.

Plaintiff makes over thirty-four separate claims for relief in this action, many dealing with his alleged false arrest, false imprisonment and the allegedly unlawful search of Khan El Land Acquisition Company's "adversely possessed" properties. Plaintiff additionally alleges that defendants have an obligation to honor the treaties and covenants guaranteed in plaintiff's "Free Exercise of Islam." He also accuses defendants Pnicks and Wells of engaging in a conspiracy to violate his Fourth Amendment rights, concluding that these defendants have acted in a malicious manner, abusing "process." Plaintiff further claims that his rights under the Equal Protection Clause have been violated and he has been subject to racial discrimination, in violation of 42 U.S.C. § 1981. Additionally, plaintiff claims that defendants have engaged in slander and defamation and caused him significant emotional distress.

Plaintiff also brings two claims against defendants CitiBank and Bank of America. He claims that these defendants engaged in mortgage fraud and that they violated the "Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 1833A (FIRREA)." He asserts that the banks engaged in "scheme" and false conduct with respect to the Hermans Lake Dr. property and the Rosary Lane property, both of which his Company allegedly came to "own" through "adverse possession."[1]

Plaintiff also asserts a number of claims that bear no relation to the allegations in the complaint: "failure to train;" respondeat superior/supervisor liability; fraud on the court; human trafficking; sale into involuntary servitude; various admiralty and maritime laws; the "Universal Declaration of Human Rights and various other covenants recognized by the Moorish Nation; violation of Bivens v. Six Unknown Agents, 403 U.S. 388 (1971); peonage; destruction of religious property; common law due process; civil rights violation by means of fraud; joint enterprise to commit fraud;

---

[1] It appears that these two banks have asserted lawful rights to the aforementioned properties, while plaintiff believes he gained a rightful interest in these properties through the doctrine of "adverse possession." Thus, plaintiff contests the bank defendants' ownership interests through allegations of state law "mortgage fraud" and under FIRREA. Plaintiff's conclusory allegations are nothing more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009). The statements simply do not suggest a plausible entitlement to relief.

detinue/unlawful detainer; and "equal rights under the law." Plaintiff's allegations appear to arise from his belief that he is immune from state and federal prosecution under the Moorish Nation.

Plaintiff seeks monetary relief, the return of property seized by the St. Louis County Police Department in connection with his arrest and indictment, and recognition by the State of Missouri of the "Moorish Treaty of Peace and Friendship of 1786."

**Discussion**

Fatal to plaintiff's assertion of immunity is the non-recognition of the Moorish Nation as a sovereign state by the United States. See Benton–El v. Odom, 2007 WL 1812615, at *6 (M.D.Ga. June 19, 2007); Osiris v. Brown, 2005 WL 2044904, at *2 (D.N.J. Aug. 24, 2005); Khattab El v. United States Justice Dept., 1988 WL 5117, at *2 (E.D.Pa. Jan. 22, 1988: see also, We the People Beys and Els v. State of New York, 165 F.3d 16, 1998 WL 801875, at *1 (2d Cir. Nov. 12, 1998) (unpublished opinion). Plaintiff cannot unilaterally bestow sovereign immunity upon himself. See United States v. Lumumba, 741 F.2d 12, 15 (2d Cir.1984). Plaintiff's status as a Moorish–American citizen does not entitle him to violate state and federal laws without

consequence.[2] And he cannot unilaterally claim that everyone associated with his ongoing state criminal action, including the newscasters who reported about his arrest, have acted unlawfully simply because he believes it so under a Moorish law that is not recognized by this Court. Consequently, plaintiff's allegations are legally frivolous and subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).[3]

Even if plaintiff's claims were not legally frivolous, this Court would have to abstain from hearing this action due to the pending state criminal action relating to these same allegations. Younger v. Harris, 401 U.S. 37, 53-54 (1971). See also Wallace v. Kato, 549 U.S. 384 (2007). In Younger, 401 U.S. at 46, the Supreme Court directed federal courts to abstain from hearing cases where "the action complained of constitutes the basis of an ongoing state judicial proceeding, the proceedings implicate important state interests, and an adequate opportunity exists in the state proceedings to raise constitutional challenges." Harmon v. City of Kansas City, Missouri, 197 F.3d 321, 325 (8th Cir. 1999); see also, Fuller v. Ulland, 76 F.3d 957, 959 (8th Cir. 1996).

---

[2]The fact that plaintiff does not claim to have made a formal renunciation of nationality is of no import. Those who have voluntarily relinquished their citizenship, like other aliens, must obey the federal and applicable state laws, just as native-born and naturalized citizens are required to do. See Khattab, supra; Osiris, supra; see also, Thorton–Bey v. United States, 2009 WL 203502, at *2 (N.D.U1. Jan. 26, 2009); Howell–El v. United States, 2006 WL 3076412, at *3 (S.D.Ill. Oct. 27, 2006).

[3]To the extent plaintiff wishes to attack the legality of the arrest warrant, he should do so within the confines of his criminal case.

Having carefully reviewed the case at bar, the Court concludes that the Younger criteria are satisfied and that abstention from this matter is warranted.

Currently, there is an ongoing state criminal proceeding "arising out of the same" facts as the case at bar. See State v. Clay, No. 13SL-CR06312-01. Moreover, plaintiff's allegations in this Court implicate important state interests, particularly with regard to state property interests. And an adequate opportunity exists in the state proceeding to raise many of the constitutional challenges plaintiff has raised in the present action, *i.e.*, plaintiff's false arrest/false imprisonment claims, as well as his claims for due process, are better litigated as Fourth and Fourteenth Amendment issues in his criminal action.

In addition to the abstention doctrine set forth in Younger, the constraints placed upon this Court by the United States Supreme Court's holding in Wallace v. Kato, 549 U.S. 384 (2007), would require this Court to stay plaintiff's claims, if his claims were not already subject to dismissal as legally frivolous. In that case, the United States Supreme Court held that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant is detained pursuant to legal process." Wallace, 549 U.S. at 397. The Court observed that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." Id. at 388.

The Court instructed that where "a plaintiff files a false arrest claim before he has been convicted . . . it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." Id. at 393-94. Otherwise, the Court and the parties are left to "speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the impending civil action will impugn that verdict, all this at a time when it can hardly be known what evidence the prosecution has in its possession." Id. at 393.

In this case, plaintiff asserts a multitude of claims, many of which arise under the Fourth Amendment, for illegal seizure, false arrest, and false imprisonment. The principles of Wallace v. Kato dictate that further consideration of plaintiff's § 1983 claims would have to be stayed until the underlying criminal charges now pending against plaintiff are resolved.

Additionally, a stay or abstention until resolution of the state criminal action would be appropriate because a person may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment, or sentence unless the conviction or sentence is reversed, expunged, or called into question by issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); Schafer v. Moore, 46 F.3d 43, 45 (8th Cir. 1995); Edwards

v. Balisok, 520 U.S. 641, 648 (1997) (applying rule in § 1983 suit seeking declaratory relief).

In light of the aforementioned, the Court will dismiss this action as legally frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B). Alternatively, plaintiff's action is subject to dismissal under the abstention doctrine of Younger v. Harris, 401 U.S. 37, 53-54 (1971), and under the principles set forth in Wallace v. Kato, 549 U.S. 384 (2007).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint because the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 23rd day of January, 2014.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE